UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
TIFFANY MAINTENANCE CO. INC.   :
              :
         Plaintiff, :
              : COMPLAINT
   -against-       :
              : Case No. 23-CV-_____ (_____)
              :
SALVATORE GIGANTE and     :
LATOYA ALLEN,        :
              :
        Defendants. :
---------------------------------------------------------x

   Plaintiff Tiffany Maintenance Co. Inc. ("Tiffany" or "Plaintiff"), by and through the undersigned attorneys, brings this Complaint against defendants Salvatore Gigante ("Sal") and LaToya Allen ("LaToya") (each individually a "Defendant" and, collectively, the "Defendants") and respectfully alleges as follows:

   1.   This is a case about greed and abuse of trust.  Tiffany was formed by and, at all relevant times, owned by Father Louis Gigante.  Father Gigante created Tiffany in 1985 to perform maintenance on the thousands of affordable housing units that he had developed in the South Bronx through his not-for-profit companies.  After Father Gigante went into retirement, Salvatore Gigante, Jr. (Father Gigante's great-nephew) and LaToya Allen (Father Gigante's long-time employee) ran Tiffany as its Chief Operating Officer and Vice-President, respectively.  Beginning in 2017, when Father Gigante was 85 years old and experiencing the onset of Alzheimer's Disease, Sal and LaToya began plundering Tiffany's assets for their own personal benefit.  They caused Tiffany to pay for $98,000 of high-end cabinets, kitchen counters, bathroom fixtures, tiles, and other items to upgrade Sal's Greenwich, Connecticut mansion.  They had

Tiffany pay at least $158,000 for labor and materials to renovate Sal's investment property in the Bronx.  They caused Tiffany to pay at least $195,000 to repair and renovate homes owned by Latoya in Westchester County, New York and Montvale, New Jersey.  They caused Tiffany to buy over $18,000 in supplies to renovate a house owned by a friend of Sal.  They had Tiffany pay $9,000 to paint and repair a house owned by Sal and his ex-wife.  And, they used $7,000 of Tiffany's funds to repair a pigeon coop owned by Sal's father, Salvatore Gigante, Sr.   To date, Tiffany has identified over $450,000 it paid for materials, contractors and labor to renovate, upgrade and repair properties owned by Sal, LaToya or their friends and family.

2.      Sal and LaToya hid these costs and expenses by instructing Tiffany's staff not to create work orders for any of these projects.  They caused the hundreds of thousands of dollars paid by Tiffany for these projects to appear in Tiffany's financial records as if they were overhead expenses incurred by Tiffany in the ordinary course of business.  They ensured that records were not created in Tiffany's books showing that payments were owed to Tiffany for these jobs, and they ensured that Tiffany's financial statements did not show a receivable due for them.  By falsifying these transactions on Tiffany books and records, Sal and LaToya not only hid that the free renovations they were receiving from Tiffany's accountants and from Father Gigante, they also avoided paying personal income taxes on the hundreds of thousands of dollars that they caused Tiffany to expend for their benefit.

3.      After Father Gigante died in October 2022 at age 90, his ownership of Tiffany passed to his estate and his son, Luigino Gigante ("Gino"), who became Tiffany's sole beneficial owner.  By this time, Sal and LaToya had dissipated virtually all of Tiffany's assets, and it had ceased operations. When Gino sought to obtain access to

Tiffany's financial records to try to understand where Tiffany's money had gone, Sal blocked his efforts and refused to give his access to Tiffany's accounting records. As a result, Gino terminated Sal from Tiffany on January 9, 2023 and began the investigation that uncovered Sal and LaToya's scheme to divert Tiffany's assets for their personal benefit.

Parties, Jurisdiction and Venue

4.     Plaintiff Tiffany Maintenance Co. Inc. is a New York corporation with its principal place of business located in Bronx, New York. Tiffany was created by Father Gigante to provide maintenance for affordable housing projects in the South Bronx, which had been developed by and were managed by other entities affiliated with Father Gigante. Tiffany was owned by Father Gigante during his lifetime and his interest passed to his estate upon his death in 2022.

5.     Salvatore Gigante is an individual and a citizen of the State of Connecticut, who resides in Greenwich, Connecticut. At all times relevant hereto, he was a corporate officer of Tiffany working at Tiffany's office in Bronx, New York.

6.     LaToya Allen is an individual and a citizen of the State of New Jersey, who presently resides in Montvale, New Jersey. At all times relevant hereto, she was a corporate officer of Tiffany working at Tiffany's office in Bronx, New York.

7.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is citizen of the State of New York, and Defendants are, respectively, a citizen of the State of Connecticut and a citizen of the State of New Jersey, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     This Court has personal jurisdiction over each of the Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial

part or all of the events or omissions giving rise to the claims herein occurred in this judicial district.

FACTUAL ALLEGATIONS

9.     Tiffany is part of a portfolio of entities founded by Father Gigante.  In addition to Tiffany, these companies include, SEBCO Development, Inc. ("SEBCO"), Building Management Associates, Inc. ("BMA"), Fox River Properties, Inc. ("Fox River"), and Bruckner Property Management Inc. ("Bruckner") (and 83 not-for-profit buildings providing affordable housing collectively, the "Companies").  The Companies were created by Father Gigante to fulfill his overarching mission, the revitalization of the South Bronx, a goal to which he dedicated nearly sixty years of his life.

10.     During Father Gigante's lifetime, the Companies orchestrated the construction, rehabilitation and maintenance of over six thousand affordable housing units in the South Bronx and provided jobs, housing and assistance to thousands of Bronx residents.

11.     Sal and LaToya both began working for the Companies in the mid 2000's. By mid-2010, they both held positions as officers at multiple entities within the Companies, including Tiffany.   By 2017, Sal was the Chief Operating Officer of Tiffany and LaToya was the Vice-President of Tiffany, positions which they each held until early 2023.  Both worked out of an office located on Bruckner Boulevard in the Bronx shared by several of the Companies.  In connection with their duties as officers of Tiffany, Sal and LaToya directed and supervised Tiffany's operations and reviewed and approved for payment all expenses incurred by Tiffany.

12.     In 2007, Father Gigante, who was then 75 years old, began stepping back from his role in the Companies.  By 2017, at age 85, he was no longer active in the

Companies and was suffering from the onset of Alzheimer's Disease. Although Father Gigante still owned Tiffany, he played no meaningful role in its management or operations by this time. Since at least 2017, Sal and LaToya exercised complete control over Tiffany's business operations and affairs.

13.    Since at least January 2017, and continuing until at least 2021, Sal and LaToya used their control over Tiffany to loot it for their own personal benefit. They caused Tiffany to expend hundreds of thousands of dollars to purchase materials to upgrade and renovate homes and investment properties owned by them, as well as properties owned by their family and friends. They used Tiffany's work force to perform labor on these projects and Tifany's manager to oversee the projects.

14.    Projects for which Sal and LayToya used Tiffany's funds included the following:

a)  Between February 2017 and August 2017, Tiffany spent approximately $125,000 for materials, labor and contractors to renovate and upgrade a single-family house located at 492 N. Columbus Avenue, Mount Vernon, New York owned by LaToya. Payments made by Tiffany in connection with the renovation of LaToya's home in Mount Vernon include $60,770 to a general contractor, $4,276 to purchase ceramic floor tiles, $2,600 to purchase a granite fireplace, $1,399 for crown molding and $1,218 for new doors.

b)  Between October 2017 and September 2019, Tiffany paid approximately $148,000 for materials, labor and contractors to renovate and upgrade an investment residential property located at 2875 Roebling Avenue, Bronx owned by Sal. Payments made by Tiffany in connection with the renovation and upgrade of Sal's investment property include $30,000 to a general contractor, $30,322 for hauling of construction

debris, $10,281 to a plumbing supply company, $3,955 to an electrical supply company, $1,905 for doors, and $1,430 for shower doors.

     c)  Between December 2019 and March 2022, Tiffany spent approximately $100,000 for materials and labor to renovate and upgrade a 5,500 square foot house located at 4 Banksville Road, Greenwich, Connecticut owned by Sal and his wife. Payments made by Tiffany in connection with the renovation of Sal's and Juanita's home in Greenwich include $16,331 for high end faucets and plumbing fixtures, $13,700 for kitchen cabinets, $11,358 for floor tiles, $8,200 for painting supplies, $4,500 for light fixtures, $5,500 for a kitchen countertop, $3,500 for landscaping and $3,411 for masonry.

     d)  Between October 2020 and November 2020, Tiffany spent approximately $40,000 for materials and labor to renovate and upgrade a single-family house located at 25 Hickory Hill, Montvale, New Jersey owned by LaToya Allen.  Payments made by Tiffany in connection with the renovation of LaToya's Montvale home included $1,360 for lighting fixtures, $1,251 for a shower head and sink faucet, and $3,074 for painting supplies.

     e)  Between June 2019 and August 2020, Tiffany paid $12,100 to purchase building supplies and to pay a contractor to do repairs and renovations at a single-family home located at 51 Somerset Road, New Rochelle, New York owned by Sal and his ex-wife.

     f)  In February 2018, Tiffany spent $18,046 to purchase building supplies for the renovation of a single-family house locate at 1075 Grant Avenue, Pelham, New York. owned by a friend of Sal.

g)   In July and August 2017, Tiffany spent $7,088 to pay for materials and labor to repair a pigeon coop owned by Sal's father Salvatore Gigante, Sr.,  located at 219 South Ave, Mount Vernon, New York.  Salvatore Gigante Sr. was convicted and served jail time in connection with an organized crime extortion and bribery case involving the carting industry.

15.  Both Sal and LaToya were aware of each of these above-referenced projects while they were being undertaken.  Both Sal and LaToya approved and authorized Tiffany to pay each of the expenses associated with each of these projects.

16.  Tiffany's staff and bookkeepers utilized work orders to track expenditures incurred for the projects performed by Tiffany.  For each project, Tiffany's staff was supposed to create a work order describing the work to be done and assigning the project a unique Work Order Number in Tiffany's project management and accounting software.  When expenses were incurred in connection with a particular project, the expenses would be entered in Tiffany's accounting records under that project's Work Order Number, so that Tiffany could track expenses incurred for the project and bill the customer accordingly.  When Tiffany incurred general overhead expenses (i.e., expenses not associated with a particular project), the expense would be entered in Tiffany's books without a work order number.

17.   Tiffany's staff was instructed by Sal and LaToya not to create work orders for any of the projects identified above.  Since no work orders existed for these projects, they had no Work Order Number assigned to them.  Thus, when Tiffany paid expenses for these projects, the payments would appear in Tiffany's books as general overhead expenses, rather than as costs incurred in connection with a specific project being billed to a customer.

18.     None of the projects identified above existed as a work order in Tiffany's project management and accounting software.  Since these projects effectively did not exist in the software, there were no customers, invoices, or receivables associated with them in Tiffany's books and records and the hundreds of thousands of dollars expended by Tiffany in connection with these projects appeared as general overhead expenses not associated with any particular project.

19.     Pursuant to instructions from Sal and LaToya, Tiffany's staff did not create or send invoices seeking payment in connection with any of the above-referenced projects, with one exception discussed below.

20.     A manually created invoice addressed to LaToya Allen for work at 492 North Columbus Avenue, Mt. Vernon, New York was found in a box in Tiffany's now empty offices.  The box contained two versions of this invoice, both dated August 14, 2017.  One states that the total project cost was $159,782.30 and that $67,734.38 was currently due for work that had been completed.  The second states that the total project cost was $67,734.38 and that this amount was currently due and owing.  LaToya paid Tiffany a total of $11,000 for this work.

21.     Other than the $11,000 paid by LaToya Allen and a single payment of $2,000 by Sal's friend who owned 1075 Grant Avenue, there is no record of Tiffany receiving anything in return for the approximately $457,000 in expenses it incurred in connection with the above-referenced renovations, upgrades and repairs to properties owned by Sal, LaToya and their friends and relatives.

22.     Upon information and belief, the-projects and expenses identified above do not represent all of the work performed and expenses incurred by Tiffany for

properties owned by Sal, Latoya and their friends and relatives for which Tiffany neither sought nor received payment.

23.    Sal and LaToya effectively dominated and controlled Tiffany up until Sal's ouster on January 9, 2023, and they used their control over Tiffany to hide their scheme to use Tiffany's funds and employees to renovate, upgrade and repair properties owned by them and their friends and relatives.  From shortly after his father death in October 2022, Gino attempted to obtain from Sal information about Tiffany's finances and access to Tiffany's accounting records, but Sal refused to provide him with any information or accounting records.  It was not until January 9, 2023, when Gino terminated Sal's employment at Tiffany and other entities that he was able to gain access to Tiffany's accounting records,  By reason of Sal and LaToya's concealment of their willful and wrongful conduct until Sal's termination, Plaintiff remained ignorant of Sal and LaToya's scheme to divert Tiffany's assets to themselves and to the their friends and relatives, which ignorance was not attributable to any lack of diligence on the part of Plaintiff.  Therefore, the doctrines of equitable tolling and/or estoppel apply to toll the accrual date of all of the causes of action asserted herein until January 9, 2023.

AS FOR PLAINTIFF'S FIRST CAUSE OF ACTION<br>(Corporate Waste)

24.    Plaintiff repeats and realleges the allegation set forth above as if restated in full herein.

25.    In their capacity as officers of Tiffany, Sal and LaToya caused Tiffany to purchase materials, provide labor and to make direct payments to contractors to renovate, upgrade and repair properties owned by Sal and LaToya and their friends and relatives.

26.     In their capacity as officers of Tiffany, Sal and LaToya caused Tiffany to expend at least $500,000 to renovate, upgrade and repair properties owned by Sal, LaToya and their friends and family.

27.     In their capacity as officers of Tiffany, Sal and LaToya caused Tiffany not to seek or collect consideration from themselves or their friends and family who were the beneficiaries of the payments made by and the labor provided by Tiffany to renovate, upgrade and repair their properties.

28.     The expenses incurred and the labor provided by Tiffany in connection with the renovations, upgrades and repairs to properties owned by Sal, LaToya and their friends and relatives were not incurred to advance the interests of Tiffany, but rather, were for the personal benefit of Sal, Layota and their relatives and friends who received the benefit of this work.

29.     The expenses paid by Tiffany and the labor provided by Tiffany for these projects were unnecessary, improper and served no corporate purpose.  Other than token payments totaling $13,000 received for two of the projects, Tiffany neither sought nor received any consideration for the approximately $500,000 in materials, labor and payments it provided for these projects.

30.     In causing Tiffany to undertake these projects, Sal and LaToya were not seeking to advance Tiffany's interests or to secure any benefit for Tiffany. Rather they were seeking to advance their own interests and to secure benefits for themselves.

31.     Sal and LaToya acted in bad faith when causing Tiffany to provide free renovations, upgrades and repairs for themselves and their friends and relatives.

32.     The aforementioned acts constitute the waste of corporate assets by Sal and LaToya.

33.     Sal and LaToya are jointly and severally responsible to Tiffany for the aforementioned corporate waste.

### AS FOR PLAINTIFF'S SECOND CAUSE OF ACTION
(Unjust Enrichment)

34.     Plaintiff repeats and realleges the allegation set forth above as if restated in full herein.

35.     Tiffany provided hundreds of thousands of dollars of materials and paid at least $100,000 to contractors to renovate, upgrade and repair properties owned by Sal and LaToya.  Tiffany's own employees also provided extensive labor and project management services on these projects.   With the exception of a token payment of $11,000 made by LaToya for one project, neither Sal nor LaToya have made any payments to Tiffany in exchange for the benefits they received from Tiffany.

36.     The benefits Sal and LaToya received from Tiffany were substantial.

37.     For instance, Sal purchased the brownstone at 2875 Roebling Avenue in the Bronx in July 2017 for $450,000.  He caused Tiffany to undertake a full renovation of the property that lasted from early 2018 until August 2019.  In September 2019, he sold the property for reportedly $968,888 - a return on his investment of over 115 percent.  While some portion of that increase may be attributable to other factors (such as a general increase in real estate values in the neighborhood), given that Sal owned the property for less than 26 months, most or virtually all of the of the increase in value is likely attributable to the renovations performed by and paid for by Tiffany.

38.     Likewise, from the documentation found in Tiffany's office, it appears that that actual total projects cost (without including any overhead or profit for Tiffany) to renovate and upgrade LaToya's home in 492 N. Columbus Avene in Mount Vernon was

$159,782,30.  Had LaToya had to hire a contractor to perform these repairs and renovations, the cost to her would no doubt have been significantly greater, as a contractor not controlled by her and Sal would include a profit margin in their cost, and would expect her to provide a downpayment and make progress payments before performing the work.  Instead, LaToya received an invoice of $67,734.38, on which she paid only $11,000 (which was not paid until more than a year after the work was provided).

39.    Sal and LaToya were each enriched by the materials, labor and payments to contractors provided by Tiffany in connection with the renovations, upgrades and repairs of their respective properties.

40.    The benefit obtained by Sal and LaToya was obtained at Tiffany's expense.[1]

41.    It would be unjust for Sal and LaToya to retain the benefit they received at Tiffany's expense.

42.    As a result of their unjust enrichment at Tiffany's expense, Sal and LaToya are liable to disgorge to Tiffany all the benefits they received at Tiffany's expense from the renovations, upgrades and repairs of their respective properties, including any appreciation in the value of the properties attributable to the work paid for and provided by Tiffany.

---

[1] In addition to the direct benefit they received at Tiffany's expense, Sal and LaToya received a secondary financial benefit by manipulating Tiffany's books and records so as to avoid the expenditures incurred by Tiffany for their benefit being reported as taxable income to them.  By doing so they defrauded Federal, New York, Connecticut, New Jersey and New York City taxing authorities of significant tax revenues.

AS FOR PLAINTIFF'S THIRD CAUSE OF ACTION
(Pursuant to NY BCL 720 For Neglect by Corporate Officer)

43.     Plaintiff repeats and realleges the allegation set forth above as if restated in full herein.

44.     As officers of Tiffany, Sal and LaToya had a duty to ensure that Tiffany's property was used only for proper corporate purposes.

45.     As officers of Tiffany, the disposition of Tiffany's corporate assets, including its money and its work force, were committed to Sal and LaToya's charge.

46.     To the extent that Sal or LaToya did not directly approve or authorize payments made by Tiffany or labor provided by Tiffany for the renovation, improvement and repair of properties owned by Sal, LaToya or their friends and family, but nevertheless allowed such to payments and labor to be provided by Tiffany without compensation, they neglected their duties as corporate officers.

47.     Sal and LaToya are liable to Tiffany for injuries to Tifffany's property caused by the neglect of their duties, including their failure to prevent Tiffany from providing free renovations, upgrades and repairs to properties owned by Tiffany's officers and their friends and relatives.

WHEREFORE, Plaintiff Tiffany Maintenance Co., Inc., demands judgment against Defendants as follows:

a)      On the First Cause of Action, jointly and severally against both Defendants in an amount to be determined at trial, but not less than $446,693;

b)      On the Second Cause of Action, against Defendant Salvatore Gigante in an amount to be determined at trial but not less than $648,630 and against LaToya Allen in an amount to be determined at trial but not less than $229,409;

c)      On the Third Cause of Action, in an amount to be determined at trial;

d)      Such other and further relief as the Court deems just and proper.


Dated:  New York, New York
        January 8, 2024

CLAYMAN ROSENBERG
KIRSHNER & LINDER LLP

Paul S. Hugel (PH4749)
Thomas W. Dollar (TD8376)
305 Madison Avenue, Suite 650
New York, New York 10165
(212) 922-1080
hugel@clayro.com
dollar@clayro.com

Attorneys for Plaintiff
Tiffany Maintenance Co. Inc.