```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
TIFFANY MAINTENANCE CO. INC.,            :
                                         :    24cv147 (DLC)
                    Plaintiff,           :
                                         :    OPINION AND
            -v-                          :       ORDER
                                         :
SALVATORE GIGANTE and LATOYA ALLEN,      :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the plaintiff:

Thomas W. Dollar
Paul S. Hugel
Clayman Rosenberg Kirshner & Linder LLP
305 Madison Avenue, Suite 650
New York, NY 10165

For defendant Salvatore Gigante:

Stefan B. Kalina
Cox Padmore Skolnik & Shakarchy LLP
630 Third Avenue, 23rd Floor
New York, NY 10017

For defendant LaToya Allen:

Jeffrey Benjamin
The Linden Law Group, P.C.
250 Park Avenue, 7th Floor
New York, NY 10177

DENISE COTE, District Judge:

    Tiffany Maintenance Co. Inc. ("Tiffany") has sued Salvatore Gigante ("Salvatore") and LaToya Allen ("LaToya") for plundering Tiffany's assets for their personal benefit. Following

completion of discovery, Salvatore moved for partial summary judgment in favor of his defense that the damages are limited by statutes of limitations.  For the following reasons, Salvatore's motion is denied.

## Background

The following facts are taken from the evidence submitted in connection with the motion for partial summary judgment.  The facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

Tiffany was created in the 1980s by Father Louis Gigante for the purpose of performing repairs and maintenance on affordable housing units he developed in the South Bronx.  Father Gigante also created companies that are involved in other aspects of construction, management, and maintenance of those properties.  One of the other companies he created is Building Management Associates ("BMA"), which works closely with Tiffany and manages many of the properties on which Tiffany performs maintenance work.

Father Gigante remained Tiffany's primary owner during his lifetime.  For many years, he was actively involved in Tiffany's affairs, and would visit its office a few days a week.  He also personally signed checks to Tiffany's subcontractors.  Father Gigante's involvement in Tiffany gradually decreased, however,

beginning in 2011 or 2012.  His visits to the office became less frequent, until they stopped altogether.  He also stopped signing checks on behalf of Tiffany.  By approximately 2019 or 2020, and possibly earlier, Father Gigante had symptoms of Alzheimer's disease.  By the end of his life, he rarely left his house.  He died in October 2022.

Salvatore is Father Gigante's great-nephew and ran Tiffany on his behalf.  Salvatore began working at Tiffany in 2006.  He oversaw Tiffany's operations and the maintenance work it performed.  He had authority to hire and fire Tiffany's employees, which included approximately five to ten maintenance workers and an administrative assistant.  Salvatore's management of Tiffany was supervised only by Father Gigante; when Father Gigante's health declined, Salvatore was not supervised by anyone.  LaToya also worked at Tiffany and reported to Salvatore.  Both Salvatore and LaToya signed checks to subcontractors.  At relevant times Salvatore and LaToya were formally employed and compensated by BMA rather than Tiffany.

Irwin Siegel ("Irwin") was Father Gigante's close advisor, accountant, and lawyer.  He held a power of attorney for Father Gigante beginning in 2015, and was generally an influential figure in Father Gigante's companies.  Irwin prepared Tiffany's tax returns.  He visited Tiffany's office at least once a month

3

to review checks and reports, but stopped coming to the office with such regularity once the COVID-19 pandemic began.

When Father Gigante died in October 2022, ownership of Tiffany passed to his son, Luigino Gigante ("Luigino").  Luigino fired Salvatore on January 9, 2023.  Luigino claims that he then discovered that, from 2017 through at least 2021, Tiffany's assets had been used to pay for renovations to properties owned by Salvatore, LaToya, or their family members or friends, at a total cost of nearly half a million dollars.  According to Luigino, he pieced this together by searching Tiffany's offices, discovering unpaid paper invoices indicating money owned to Tiffany, and matching those invoices to electronic work orders indicating that Tiffany had used its funds to make payments for the renovations.

Tiffany's paper records, to which Luigino obtained access after firing Salvatore, include financial records, invoices, and checks.  These records were kept in Tiffany's office, in a filing cabinet and banker's boxes on a nearby shelf.  They were organized by year, building manager, building, and work order.

The electronic work orders that Luigino reviewed were tracked by Tiffany and BMA in real estate management software called MRI.  The typical workflow was that a BMA employee would input work orders into MRI and those work orders would be

4

received by Tiffany.  Tiffany would then complete the work and send an invoice, either to BMA or, in some cases, to another entity for which BMA worked, usually also affiliated with Father Gigante.

This action was filed on January 8, 2024.  Tiffany brings claims of corporate waste, unjust enrichment, and neglect by a corporate officer, N.Y. Bus. Corp. Law § 720, against Salvatore and LaToya.  Tiffany also contends that because Salvatore and LaToya used their control over Tiffany to hide their scheme, Tiffany's claimed damages are not limited by statutes of limitations that would otherwise be applicable.  Specifically, Tiffany argues that the doctrines of equitable tolling or equitable estoppel, or both, tolled the statutes of limitations until January 9, 2023, when Luigino obtained access to Tiffany's records.

Salvatore filed a motion for partial summary judgment on November 15, 2024, which became fully submitted on January 10, 2025.  LaToya did not join this motion.

## Discussion

Salvatore seeks summary judgment in favor of his defense that the relevant statutes of limitations are not tolled by the doctrines of equitable tolling or equitable estoppel.  His primary argument is that financial records were openly available

to Father Gigante and Irwin in both electronic and paper formats.  As explained below, Salvatore is not entitled to summary judgment.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those facts that "might affect the outcome of the suit under the governing law."  Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted).  "The court's role with respect to such a motion is not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried."  Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted).

Because the claims in this diversity action are brought under New York law, New York law will determine whether statutes of limitations are tolled.  See Koral v. Saunders, 36 F.4th 400, 408-09 (2d Cir. 2022); Converse v. Gen. Motors Corp., 893 F.2d 513, 515 (2d Cir. 1990).  New York law recognizes a doctrine of

6

equitable estoppel, but not equitable tolling.  See Jang Ho Choi v. Beautri Realty Corp., 22 N.Y.S.3d 431, 432 (1st Dep't 2016) (collecting cases); see also Koral, 36 F.4th at 409 n.2.

Under New York law, equitable estoppel requires

> [1] that the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, [2] that the plaintiff relied on the misrepresentation and [3] that the reliance caused plaintiff to delay bringing timely action.

Koral, 36 F.4th at 410 (citation omitted); accord Zumpano v. Quinn, 6 N.Y.3d 666, 674-75 (2006).  For non-fiduciary defendants, the first element requires a showing of "deceptive conduct" because, as a general matter, "[a] wrongdoer is not legally obliged to make a public confession, or to alert people who may have claims against [them], to get the benefit of a statute of limitations."  Zumpano, 6 N.Y.3d at 675.  If, on the other hand, the plaintiff demonstrates "a fiduciary relationship which gave the defendant an obligation to inform him or her of facts underlying the claim," then "concealment without actual misrepresentation" satisfies the first element.  Id. at 675 (citation omitted).  Even in cases involving fiduciary relationships, however, tolling ceases "when the plaintiff possesses sufficient facts that he must engage in some inquiry, and he fails to live up to this obligation."  Koral, 36 F.4th at 410 (citation omitted).

7

"A fiduciary relationship exists under New York law when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Spinelli v. Nat'l Football League, 903 F.3d 185, 207 (2d Cir. 2018) (citation omitted). Corporate officers and directors are fiduciaries. Lindner Fund, Inc. v. Waldbaum, Inc., 82 N.Y.2d 219, 223 (1993). Although ordinary employees are not always fiduciaries, "[s]pecial circumstances giving rise to a fiduciary duty may be present where the [employer] reposed confidence in the [employee] and reasonably relied on the [employee's] superior expertise or knowledge." Pauwels v. Deloitte LLP, 83 F.4th 171, 183-84 (2d Cir. 2023).

The plaintiff has presented evidence from which a jury could find that Salvatore was a fiduciary. For one thing, there is evidence suggesting that Salvatore was Tiffany's COO, which he denies. If Salvatore was an officer of Tiffany, he was a fiduciary. See Lindner Fund, Inc., 82 N.Y.2d at 223. In addition, there is abundant evidence that Salvatore ran Tiffany, and reported to no one other than Father Gigante. Salvatore was responsible for overseeing the proper use of Tiffany's funds and signed checks to subcontractors. It appears, therefore, that Tiffany "reposed confidence" in him and relied on his "superior expertise or knowledge" in the affairs of the company, Pauwels,

8

83 F.4th at 184, and that he had a "duty to act for or to give advice for the benefit of" Tiffany and its owner, Father Gigante.  Spinelli, 903 F.3d at 207 (2d Cir. 2018).

The fact that Salvatore was formally employed and compensated by BMA, a closely related entity also owned by Father Gigante, is unlikely to affect whether he was a fiduciary.  And even if a jury were to find that Salvatore was a fiduciary with respect to BMA, and not with respect to Tiffany, the result would be the same: he would owe a fiduciary duty to Father Gigante, who owned both companies.

If the jury concludes that Salvatore was a fiduciary, it will suffice for the plaintiff to prove "concealment," as opposed to "actual misrepresentation," to obtain the benefit of equitable estoppel.  There is a genuine dispute of material fact as to whether the defendants concealed their plundering of Tiffany's assets, as opposed to disclosing it to Father Gigante. Salvatore testified in his deposition that Father Gigante and Irwin were aware of at least some of the expenditures on his and LaToya's properties, and did not expect any repayment for them. According to Salvatore, Father Gigante wanted Tiffany's assets to be used to reward Salvatore and LaToya for their loyal service to Father Gigante's companies.  If true, that indicates a lack of concealment.  But Father Gigante has passed away, and,

9

as Salvatore admits, such an understanding was never memorialized in writing.  Meanwhile, Irwin states in his affidavit that he did not learn of the allegedly improper transactions until after Salvatore's employment was terminated, clearly contradicting Salvatore's testimony.

A reasonable jury could find that Salvatore was a fiduciary who concealed his use of Tiffany's funds for his private benefit.  A reasonable jury could also find that Tiffany relied on Salvatore not to conceal such wrongdoing, and that this reliance caused it to delay bringing a timely action.  That would satisfy the elements of equitable estoppel and toll the applicable statutes of limitation.  See Koral, 36 F.4th at 410.

In claiming that the applicable statutes of limitations are not tolled, Salvatore relies in significant part on federal law and refers to the elements of equitable tolling.  Those arguments fail.  As noted above, New York law governs, and it does not recognize the doctrine of equitable tolling.

Salvatore also argues that he did not "wrongfully conceal" any records, or engage in any "fraud, misrepresentations or deceptions," related to the allegedly improper projects.  But this argument misunderstands the applicable standard.  As explained above, the plaintiff may be able to show at trial that Salvatore was a fiduciary, in which case it will suffice for the

10

plaintiff to prove "concealment," as opposed to "actual misrepresentation" or "deceptive conduct."  Zumpano, 6 N.Y.3d at 675 (citation omitted).  In this context, "concealment" can be shown by proving that Salvatore did not step forward and fulfill his "obligation to inform" Tiffany as to the misuse of corporate assets.  Id. (citation omitted).  In other words, "concealment" need not involve any specific act of wrongdoing, or any affirmative action at all.  See Jordan v. Ford Motor Co., 426 N.Y.S.2d 359, 360-61 (4th Dep't 1980) (distinguishing "concealment without actual misrepresentation" from "false statements of fact" or "active concealment of the true facts").

Salvatore also argues that Tiffany cannot claim the benefit of equitable estoppel because it had either constructive notice or actual knowledge of the relevant facts, such that it could have brought its claims before January 2023.  For this argument to succeed, Salvatore must establish that a reasonable jury would necessarily find that Tiffany "possessed timely knowledge sufficient to have placed [it] under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable statute of limitations."  Brean Murray, Carret & Co. v. Morrison & Foerster LLP, 87 N.Y.S.3d 178, 180 (1st Dep't 2018) (citation omitted).

11

Salvatore primarily argues that Tiffany had constructive notice of the alleged wrongdoing because electronic and paper records were located at Tiffany's office and "readily available" to both Father Gigante and Irwin.  There are many problems with this argument.  For one thing, Irwin's declaration states that neither he nor Father Gigante knew how to use the MRI software, which contained the electronic records at issue, and that Father Gigante did not even own a computer.  According to Luigino, he only pieced together that Tiffany's funds had been misused through a painstaking process of reviewing and cross-referencing paper and electronic records.

Thus, a reasonable jury could infer that the misuse of Tiffany's funds could only be detected with significant effort. Salvatore has not established that Father Gigante or Irwin had any obligation or reason to do a detailed review of Tiffany's records with an eye toward misuse of funds by Salvatore or LaToya -- particularly since Salvatore was entrusted to run Tiffany's operations, and he was doing so without supervision toward the end of Father Gigante's life.  Meanwhile, Father Gigante and Irwin were visiting Tiffany's office less and less frequently.  Salvatore also claims that Irwin was Tiffany's accountant, and that this role put him in a position to identify misuse by Salvatore and LaToya.  But Irwin states that his role

was limited to preparing Tiffany's tax returns, and that Tiffany used an outside accountant. Salvatore also does not explain how ordinary accounting work would be likely to lead to detecting misuse of funds, particularly if doing so requires careful analysis and cross-referencing of records.

Finally, Salvatore suggests that Tiffany had a degree of actual knowledge of wrongdoing. He points to a June 29, 2021 letter in which he accused Tiffany's Maintenance Director of improperly using company resources for his benefit. He also states that, as of 2022, Luigino already suspected that Salvatore "was doing things not above the board." But it is not clear whether such concerns were raised to Father Gigante, the only person with greater authority over Tiffany than Salvatore himself, or Irwin, who held a power of attorney for Father Gigante. Even if these concerns were raised to them, it is uncertain that they would have created a duty to make a painstaking inquiry into whether Salvatore or LaToya were misusing Tiffany's funds, particularly at a time when Salvatore was trusted to run the company. In sum, a reasonable jury could find that Tiffany did not have sufficient "timely knowledge," whether through constructive notice or actual knowledge, to put it "under a duty to make inquiry and ascertain all the relevant

13

facts." Brean Murray, Carret & Co., 87 N.Y.S.3d at 180 (citation omitted).

## Conclusion

Salvatore Gigante's November 15, 2024 motion for partial summary judgment is denied.

Dated:   New York, New York
         April 18, 2025

                                   _____
                                          DENISE COTE
                                   United States District Judge

14